**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**THOMAS RODDA,**

        **Plaintiff,**

 vs.              **5:12-cv-1480
                  (MAD)**

**CAROLYN W. COLVIN,**
*Acting Commissioner of Social Security,
in place of Michael J. Astrue*,

         **Defendant.**
_____

**APPEARANCES:**         **OF COUNSEL:**

**THE ANTONOWICZ GROUP**    **PETER W. ANTONOWICZ, ESQ.**
148 W. Dominick Street
Rome, New York 13440
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**  **AMANDA J. LOCKSHIN, ESQ.**
Office of the General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

  Plaintiff Thomas Rodda brings the above-captioned action pursuant to 42 U.S.C. § 405(g), seeking a review of the Commissioner of Social Security's decision to deny his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Presently

before the Court are Plaintiff's motion for judgment on the pleadings, Dkt. No. 12, and Defendant's opposition and cross-motion for judgment on the pleadings, Dkt. No. 13.

## II. BACKGROUND

On March 18, 2010, Plaintiff protectively filed an application for DIB and SSI, alleging a disability onset date of October 15, 2009. Dkt. No. 10, Administrative Transcript ("T."), at 148-53; 154-57. On August 18, 2010, Plaintiff's applications were denied, T. 90-95, and on June 22, 2011, Plaintiff and his counsel appeared by video at a hearing before Administrative Law Judge ("ALJ") Bruce S. Fein, T. 42-87. ALJ Fein issued a decision denying Plaintiff's claims for benefits on September 22, 2011. T. 18-34. Thereafter, Plaintiff requested review by the Appeals Council, T. 15, which review was denied on September 10, 2012, T. 1-6, thereby making the ALJ's decision the final decision of the Commissioner of Social Security.

Plaintiff was 37 years old at the time of the ALJ's decision, with a high school education and past work experience as a cook, cable technician, guide, caretaker, and laborer. T. 32. Plaintiff alleges disability as a result of non-epileptic seizure disorder, narcolepsy, sleep apnea, status post anterior cruciate ligament tear and multiple surgeries in the left knee, depressive disorder-NOS, panic disorder, and alcohol abuse in early remission. T. 34.

## III. DISCUSSION

For purposes of both DIB and SSI, a person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the

2

> impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)) (other citations omitted).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

3

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since October 15, 2009. T. 23. At step two, the ALJ concluded that Plaintiff suffered from post anterior cruciate ligament tear and multiple surgeries in the left knee, depressive disorder-NOS, panic disorder, and alcohol abuse in early remission, which qualified as a "severe impairments" within the meaning of the Social Security Regulations (the "Regulations"). T. 24-26. The ALJ also concluded that "[a]s for the claimant's alleged narcolepsy, seizures, and sleep apnea, there is not enough conclusive medical evidence in the record to show that these conditions rise to the level of a severe impairment." *Id.* At the third step of the analysis, the ALJ determined that Plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. T. 26-28. The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform "medium work" as defined in the Regulations and was

> able to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. The claimant is able to frequently climb, balance, stoop, and crouch, and he is only able to occasionally crawl and kneel. The claimant must avoid concentrated exposure to respiratory irritants and workplace hazards such as machinery and heights due to his history of non-epileptic seizure-like activity. Additionally, the claimant can engage in simple work in that he is able to (on a sustained basis) understand, carry out, and remember simple instructions and directions, respond appropriately to supervision, co-workers, and usual work situations, and deal with changes in a routine work setting.

T. 28. At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. T. 32. At step five, relying on the medical-vocational guidelines set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff had the RFC to perform jobs existing in significant numbers in the national economy. T. 32. Therefore, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Act. T. 33.

In seeking federal judicial review of the Commissioner's decision, Plaintiff argues that: (1) the Commissioner erred when he failed to find that Plaintiff's sleep and seizure disorders were severe medical impairments; (2) the Commissioner erred in determining Plaintiff's RFC; (3) the ALJ improperly assessed Plaintiff's credibility.

**I.    Severity of Sleep and Seizure Disorder Impairments**

Plaintiff argues that the ALJ erred by failing to find that Plaintiff's sleep and seizure disorders were severe impairments. Plaintiff contends that the ALJ's decision in this regard was not supported by substantial evidence. In addition, the Court discerns two related points in support of that argument: (1) the ALJ did not fulfill his duty to develop the record with respect to Plaintiff's seizures, and (2) the ALJ failed to properly consider whether Plaintiff's concurrent impairments, in combination, were severe.

A "severe" impairment is one that significantly limits an individual's physical or mental ability to do basic work activities. *Meadors v. Astrue*, 370 Fed. Appx. 179, 182 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include,

> (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); *see also* SSR 85-28, Titles II and XVI: Medical Impairments That Are Not Severe, 1985 WL 56856, *3-4 (Soc. Sec. Admin. 1985).

Plaintiff has the burden at step two in the sequential evaluation process to demonstrate the severity of his impairment. *See* 20 C.F.R. § 404.1520(c). The severity analysis at step two may

5

do no more than screen out *de minimis* claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue*, No. 03-CV-0521, 2008 WL 833968, *2 (N.D.N.Y. Mar. 27, 2008) (citing *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). A condition that improves and is repairable may not be considered a disability for purposes of disability benefits. *See Pennay v. Astrue*, No. 3:05-CV-673, 2008 WL 4069114, *4 (N.D.N.Y. Aug. 27, 2008).

In support of his argument that the ALJ's severity determination was not supported by substantial evidence, Plaintiff contends that "[w]hile [he] has not been consistently diagnosed [with sleep and seizure disorders], it is clear from the medical evidence that [he] experiences symptoms consistent with these disorders[,]" and that "[h]e also was definitively diagnosed with obstructive sleep apnea by a doctor specializing in sleep disorders." Dkt. No. 12-1 at 12-13. Based upon a review of the record, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff failed to meet his burden of establishing that these impairments are severe and that Plaintiff's sleep and seizure disorder impairments do not cause more than minimal limitation in Plaintiff's ability to perform basic work activities.

Contrary to Plaintiff's assertion, the record is not clear with respect to Plaintiff's sleep and seizure symptoms. Dr. Rivera, the Commissioner's consultative examiner, noted that Plaintiff has "a very confusing history" and none of the providers he had seen, including his primary care physician, cardiologist, and neurologist, were convinced of any particular diagnosis. T. 25. Moreover, the fact that Plaintiff reported symptoms that are consistent with these disorders, without more, is unavailing. The Regulations provide that "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's

6

complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p, Titles II and XVI: Symptoms, Medically Determinable Physical and Mental Impairments, and Exertional and Nonexertional Limitations, 1996 WL 374187 (Soc. Sec. Admin. 1996) ("Although the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone.").

Plaintiff next directs the Court's attention to Dr. Young's diagnosis of his condition as a "non-epileptic seizure disorder," and argues that the ALJ failed to consider the symptoms documented by Dr. Young in determining that this impairment was not severe. Dkt. No. 12-1 at 12, 17. As discussed above, however, Plaintiff's subjective complaints about his symptoms must be corroborated by medical signs or laboratory findings. Here, no such evidence exists in the record. In addition, Dr. Young's findings were contradicted by the reports of other medical professionals in the record before the ALJ. *See, e.g.*, T. 257 (primary care physician Dr. Taylor noting "I have never entertained the idea of disability for him"); T. 353 (consulting physician Dr. Rivera concluding "in his case, he has normal EEGs and there is nobody that is convinced he is having seizures, and there is very little to suggest that he has true narcoleptic episodes or that he has multiple syncopal episodes").

Plaintiff also claims "there are objective medical signs and laboratory findings establishing a physical impairment," Dkt. No. 12-1 at 19, but cites no evidence in support of this claim. The records cited by Plaintiff ostensibly in support of this statement provide no such support. *See* T. 432 (Dr. Levine's March 17, 2010 "Impression: Mild symptomatic Obstructive

Sleep Apnea Syndrome with no evidence of pathologic sleepiness"); T. 320 (Dr. Levine's March 30, 2010 "Impression: Elimination of Obstructive Sleep Apnea Syndrome"); T. 451-54 (Dr. Young's May 11, 2011 "Seizures Residual Functional Capacity Questionnaire" which neither contains nor references any laboratory or test results).

Finally, Plaintiff's assertion that he was "definitively diagnosed with obstructive sleep apnea" does not support his argument that these impairments are severe. The record refelcts that Plaintiff's sleep disorder diagnoses are anything but definitive and, moreover, that CPAP treatment was effective in eliminating its symptoms. For example, Dr. Levine diagnosed Plaintiff with "Mild symptomatic Obstructive Sleep Apnea Syndrome with **no** evidence of pathologic sleepiness", T. 432 (emphasis in original), and noted that "[f]ollowing effective CPAP titration, virtually all respiratory events, desaturations, and snoring were eliminated", T. 320.

Accordingly, the Court finds that the ALJ's determination that "[w]hile there are some clinical findings regarding the claimant's alleged narcolepsy, seizures, and sleep apnea, there is not enough conclusive, objective medical testing to show that these conditions rise to the level of a severe impairment; therefore, they are not severe within the meaning of the Regulations", T. 26, was supported by substantial evidence.

### A. Duty to Develop the Record

"An ALJ has an obligation to develop the administrative record, including, in certain instances, recontacting a source of a claimant's medical evidence, *sua sponte*, to obtain additional information." *Lukose v. Astrue*, No. 09-CV-962S, 2011 WL 5191784, *3 (W.D.N.Y. Oct. 31, 2011) (citing *Schaal*, 134 F.3d at 505); *see also* 20 C.F.R. § 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history . . . . By complete medical history, we mean the records of your medical source(s) covering at least the 12

months preceding the month in which you file your application."). The ALJ will obtain additional evidence if he or she is unable to make a disability determination based on the current record. *See* 20 C.F.R. § 416.920b(c). The Regulations provide that, "[i]f the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency." *Id.* This duty exists even if Plaintiff is represented by counsel. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). However, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Nor does the ALJ have a limitless duty to develop the record on Plaintiff's behalf. *See Gillard v. Colvin*, No. 11-CV-1173, 2013 WL 954909, *2 (N.D.N.Y. Mar. 12, 2013).

Plaintiff claims that the "ALJ failed to sufficiently develop the record as to whether the claimant's seizure disorder meets or equals the listings at 11[.]00A." Dkt. No. 12-1 at 13. More specifically, Plaintiff argues that because the Commissioner's consultative examiner's description of the seizures he witnessesd "was not consistent with the requirements of the statute," the ALJ should have "inquired of plaintiff for a more complete description of his seizures in order to examine the applicability of the Listing." *Id.* The Court finds this argument to be without merit.[1]

---

[1] Plaintiff also argues that "the ALJ did not discuss evidence of the claimaint's treatment compliance, as required by statute and regulation." Dkt. No. 12-1 at 13 (citing CRT Pt. 404, Subpt. P, App. 1 § 11.00A; SSR 87-6). The cited Regulations apply to individuals who suffer from epileptic seizures and are treated with anticonvulsant drugs. Since Plaintiff allegedly suffers from *non-epileptic* seizure disorders and is not prescribed any medications for his seizures, those Regulations do not apply. In any event, were these Regulations to apply, the ALJ's failure to examine Plaintiff's compliance with a prescribed treatment regiment would have been to Plaintiff's benefit, not the Commissioner's.

9

As an initial matter, the Court notes that Section 11.00A, by its terms, explicitly applies to "Epilepsy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.00A. Plaintiff places significant reliance on the opinion of Dr. Young, who diagnosed Plaintiff with "*non-epileptic* seizure disorder." Thus, it is questionable whether this Regulation would even apply to Plaintiff's claim.

Nevertheless, in determining whether a claimant's seizure disorder meets the Listings at 11.00A, the Regulations provide that "[t]estimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.00A. Here, a medical professional did provide a description of Plaintiff's seizures. Plaintiff does not contend that this description was inconsistent or insufficient. Rather, Plaintiff concedes that this description did not satisfy the requirements of the Regulations in order for the ALJ to find him disabled. Thus, it appears that Plaintiff argues that the ALJ was required to solicit additional observations of Plaintiff's seizures until a witness could be found whose description would substantiate a finding that he is disabled. No such requirements exists. "[A]lthough the ALJ has a duty to develop the record fully and fairly, he is not required to act as the claimant's counsel. Claimant bears the burden of establishing a *prima facie* entitlement to benefits. Similarly, Claimant 'bears the risk of non-persuasion.'" *See Thompkins v. Astrue*, No. 1:12-0046, 2013 WL 1337195, *9 (S.D. W. Va. Mar. 29, 2013)

Nor was the ALJ required to inquire of Plaintiff himself for a more complete description of his seizures. Plaintiff contends that his seizures cause him to lost consciousness. Thus, by definition, Plaintiff would be unable to provide a "complete" description of these episodes, during which he was unconscious. Moreover, any such inquiry would be duplicative of existing evidence in the record, which was replete with Plaintiff's varying descriptions of his seizures. In

10

any event, further details from Plaintiff is not the "essential" evidence called for by the Regulations in making this determination.

Thus, the ALJ did not fail in his duty to develop the record.

**B.     Concurrent Impairments**

"[I]if '[plaintiff's] concurrent impairments which, when considered in combination, are severe' the ALJ must determine whether the combined effect of those impairments can also be expected to continue in severity for twelve months." *Iannopollo v. Barnhart*, 280 F. Supp. 2d 41, 47 (W.D.N.Y. 2003) (quoting 20 C.F.R. § 404.1522(b)). Plaintiff argues that "even if neither the sleep disorder or the non-epileptic seizure disorder rises to the level of sufficient severity, the ALJ failed to abide by the requirements of 20 C.F.R. § 404.1522." Dkt. No. 12-1 at 19.

Plaintiff's argument lacks merit. As an initial matter, it is clear from the record that the ALJ did, in fact, consider Plaintiff's alleged sleep disorder and seizure disorder in combination. *See, e.g.*, T. 26 (ALJ noting that "not only do the claimaint's non-severe impairments fail to meet the requirements set forth in the neurological section of the Listings at 11.00 *et. seq.*, the medical evidence is not definitive enough to elevate them to the level of a severe impairment"). In addition, the record evidence demonstrates that 20 C.F.R. § 404.1522 would not apply to Plaintiff's "concurrent impairments" because his sleep apnea had improved with treatment. *E.g.*, T. 320 (Dr. Levine noting that "[f]ollowing effective CPAP titration, virtually all respiratory events, desaturations, and snoring were eliminated"). The Regulations provide that "[i]f one or more of your impairments improves or is expected to improve within 12 months, so that the combined effect of your remaining impairments is no longer severe, we will find that you do not meet the 12-month duration test." 20 C.F.R. § 404.1522(b). Accordingly, the Court finds that the ALJ did not err with respect to the application of 20 C.F.R. § 404.1522.

### C. Harmless Error

Notwithstanding the above analysis, were the Court to find that the ALJ did err in his determination that Plaintiff's sleep and seizure disorders were not "severe," any such error would be harmless. Although the ALJ did not find these particular impairments to be severe, he did find several other of Plaintiff's impairments to be severe, continued the sequential analysis, and included Plaintiff's limitations associated with his non-severe impairments in the RFC analysis. *See Woodmancy v. Colvin*, No. 12-cv-991, 2013 WL 5567553, *2 (N.D.N.Y. Oct. 9, 2013) (noting that "the omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in her RFC determination"); *Bender v. Astrue*, No. 09-CV-880, 2010 WL 5175023, *4 (N.D.N.Y. Nov. 29, 2010) (finding that "because the ALJ concluded that Plaintiff had established other impairments considered severe under the Act (including mental impairments—depression and anxiety disorder) and continued with the sequential analysis, any errors in her findings at step two of the analysis were harmless") (citing cases).

### II. Residual Functional Capacity ("RFC")

Residual functional capacity is:

what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, *2 (Soc. Sec. Admin. July 2, 1996)). In making an RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations

which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a)**.**

Plaintiff first argues that the ALJ "failed to properly weight the evidence in accordance with 20 C.F.R. § 404.1527[,]" because he "should have accorded great weight to the opinions of treating physician Young." Dkt. No. 12-1 at 20. Plaintiff next argues that "[t]he ALJ failed to properly consider all of the plaintiff's impairments, both severe and non-severe, in the determination of [RFC]." *Id.* at 21. Finally, Plaintiff contends that "[t]here is no indication in the record that this report by Dr. Young was properly considered by the Appeals Council, or of the amount of weight accorded to this treating physician's opinions." *Id.*

### A. Treating Physician Rule

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callhan*, 168 F.3d 72, 78–79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). An ALJ may refuse to consider the treating physician's opinion only if he is able to set forth good reason for doing so. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the

> treating physician's opinion; (iii) the consistency of the opinion with
> the record as a whole; (iv) whether the opinion is from a specialist;
> and (v) other factors brought to the Social Security Administration's
> attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence." *See Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009).

Here, the ALJ gave "reduced weight to the medical source statement completed by Dr. Young because this report appears to be based on the self-reporting of the claimant rather than objective medical evidence." T. 32. For many of the same reasons discussed above with respect to Plaintiff's argument that the ALJ should have found his sleep and seizure disorders severe, the Court finds no error here warranting remand. As discussed, Dr. Young's opinion was not consistent with the record as a whole, and was unsupported by an objective medical evidence. In addition, to the extent Dr. Young opined on issues reserved to the Commissioner, including Plaintiff's credibility, the ALJ appropriately discounted those opinions. *See* 20 C.F.R. § 404.1527(d).

**B.      Consideration of Non-Severe Impairments in RFC Determination**

Plaintiff's argument here is expressly contradicted by the record. The ALJ stated in his decision that "despite the fact that I have determined that some of the claimant's physical impairments are non-severe, the limiting effects of all the claimant's physical impairments, even those that are not severe, were considered in determining the claimant's residual functional capacity assessed below. . . . In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, . . ." T. 26, 28. Ultimately, the ALJ found that "[t]he claimant must avoid concentrated exposure to respiratory irritants and workplace hazards such as machinery and heights due to his history of non-epileptic seizure-like activity." Accordingly, the argument warrants no further consideration.

### C. Treatment of Dr. Young's Report by Appeals Council

It is not entirely clear to the Court what error Plaintiff complains of here. As discussed above, the ALJ made clear in his report the weight he gave to Dr. Young's opinion and the reasons therefor. In addition, the Appeals Council specifically referred to this report in its listing of exhibits considered. T. 5. Plaintiff claims that the Appeals Council was required to discuss this report in its notice, but none of the cited Regulations imposes such an obligation. To the extent Plaintiff contends that Dr. Young's report was "new" evidence which the Appeals Council was required to specifically address,[2] the Court finds that this evidence was not new as it predated the ALJ's decision and was part of the record considered by the ALJ.

---

[2] *See* 42 U.S.C. 405(g) (sentence six) ("The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; . . .").

Accordingly, the Court finds that RFC standards were correctly applied and none of the errors claimed by Plaintiff with respect to the ALJ's RFC determination warrant remand.

### III. Plaintiff's Credibility

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96–7p, 1996 WL 374186, *2 (Soc. Sec. Admin. 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record. *Id.* at *5.

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and

16

whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (citations omitted)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *Howe–Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891,*10 (E.D.N.Y. June 27, 2007).

In this case, the ALJ discussed plaintiff's hearing testimony and determined:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are only partially credible. . . . Although I have found the claimant's statements as to the intensity, frequency, and limiting nature of his impairments to be partially credible, this does not mean that the claimant has no pain or symptoms. Rather, a finding of partially credible means that the claimant has failed to produce appropriate, probative evidence as required by the Social Security Act, Regulations, and Rulings to substantiate his subjective allegations of disabling symptoms. In the absence of such substantiating evidence, controlling weight cannot be given to subjective complaints, no matter how intensely expressed (SSRs 96-3p and 96-4p ).

Plaintiff argues that his "allegations of pain, limitation and fatigue have been consistent throughout the record" and his "credibility is bolstered by a consistent work record[.]" Dkt. No. 12-1 at 23. Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F. R. § 404.1529(c)(3)(i)-(iv), in assessing Plaintiff's credibility. The ALJ discussed plaintiff's daily activities, *i.e.*, cooking, cleaning, shopping, visiting friends, and bathing. T. 29. The ALJ thoroughly discussed Plaintiff's subjective complaints, including the frequency and intensity of his symptoms, such as chronic left leg pain, fatigue caused by seizures, anxiety around large groups of people, and difficulty with memory and concentration. *Id.*

17

Several other points merit discussion here. First, the ALJ did not entirely discredit Plaintiff's testimony. Rather, he found his subjective complaints to be "only partially credible." T. 31. Second, the ALJ found that Plaintiff's subjective complaints were not sufficiently corroborated by objective evidence, as discussed above with respect to Dr. Young's report. Third, as also discussed above, Plaintiff's complaints have not been consistent. His description of his symptoms has, if anything, consistently changed over time. For example, as noted by the ALJ, Plaintiff's primary care physician reported that Plaintiff "tells me some different things today that he has not told me in the past but interestingly enough he told the psychiatrist he does not think he can work and he has applied for disability . . . . I am not sure again how much to believe him as he seems to be changing his story somewhat." T. 31. Finally, Plaintiff has failed to adequately explain to the Court how Plaintiff's work history bolsters his credibility.

Taken as a whole, the record supports the ALJ's determination that Plaintiff was not entirely credible. The Court finds that the ALJ employed the proper legal standards in assessing the credibility of Plaintiff's complaints of pain and adequately specified the reasons for discrediting Plaintiff's statements.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**; as such, any appeal from this Order will be to the Court of Appeals for the Second Circuit; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 27, 2013
     Albany, New York

_Mae A. D'Agostino_
U.S. District Judge